5/20/2026 5:08 PM
26CV25476

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| YASMEEN HANOOSH,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>PORTLAND STATE UNIVERSITY, a university,<br>and ANN CUDD, an individual.<br><br>　　　　Defendants. | CASE NO.:<br><br>**COMPLAINT**<br>(National Origin Discrimination – ORS §<br>659A.030(1)(a); 42 USC 1983 -- First<br>Amendment Discrimination & National Origin<br>Discrimination under the Fourteenth<br>Amendment; Defamation)<br><br>Prayer: $7,000,000<br>ORS § 21.160(1)(d)<br>(Claims not subject to mandatory arbitration)<br><br>**DEMAND FOR JURY TRIAL** |

**INTRODUCTION**

1.

Plaintiff Yasmeen Hanoosh brings this action alleging that Defendants unlawfully discriminated against her based on her national origin and retaliated against her for engaging in protected speech, in violation of ORS § 659A.030, the First and Fourteenth Amendments to the United States Constitution (42 USC § 1983), and Oregon common law.

Plaintiff further alleges that Defendants defamed her by publicly and falsely portraying her as aligned with terrorism and antisemitic ideology, and by making additional false and misleading statements about the nature and context of her speech. Plaintiff also alleges that Defendants' actions, including reliance on biased complaints, one-sided investigatory practices, and the amplification of unfounded safety concerns, contributed to a hostile work environment

PAGE 1 – COMPLAINT

**ALBIES & STARK**
ATTORNEYS AT LAW
1500 SW FIRST AVE #1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

**EXHIBIT 1**
**Page 1 of 28**

and reflect pretextual and discriminatory decision-making, in addition to violating constitutional and statutory protections.

## JURISDICTION & VENUE

2.

Plaintiff Yasmeen Hanoosh ("Hanoosh") is, and at all relevant times was, an Arab-American woman of Iraqi Christian descent, placing her within multiple protected classes under federal and Oregon law, including national origin, race, religion, and sex. She is a U.S. citizen and resident of Oregon.

3.

Defendant Portland State University ("PSU") is a public university, with its principal place of business in Multnomah County, Oregon. As such, venue in Multnomah County is appropriate pursuant to ORS 14.080(1) as well as ORS 14.080(2).

4.

Defendant Ann Cudd ("Cudd") is an individual and President of PSU. She is a resident of Multnomah County, Oregon.

## FACTUAL ALLEGATIONS

5.

Dr. Hanoosh's identity, background, and scholarly work demonstrate a long-standing commitment to pluralism, human rights, and nonviolence.

6.

PSU hired Dr. Hanoosh as an Assistant Professor of Arabic in its World Languages and Literatures Department in fall of 2010. PSU granted her tenure as an Associate Professor in 2016 and promoted her to Full Professor in 2021.

///

PAGE 2 – COMPLAINT

**ALBIES & STARK**
**ATTORNEYS AT LAW**
1500 SW FIRST AVE #1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

**EXHIBIT 1**
**Page 2 of 28**

7.

Dr. Hanoosh has served as Head of PSU's Arabic Section since 2011, where she teaches Arabic language, literature, and culture classes. Dr. Hanoosh has also served in the Honors Program, University Studies, and the Summer Scholars (Bridge) Program for several years.

8.

Dr. Hanoosh has had a successful and positive teaching career at PSU, and has authored several books, short stories, chapters, and scholarly articles, as well as many Arabic-English literary translations, all while serving as a tremendous resource for students and colleagues. She is the recipient of several grants and awards including from the U.S. Department of Education and the National Endowment for the Arts, and no less than nine (9) grants from PSU. Dr. Hanoosh is also deeply involved in the local community. In short, she is a well-respected scholar and educator, recognized by her peers, students, and community for her contributions to PSU's learning environment, and the greater Portland community.

9.

As a recognized scholar of Iraqi studies and Middle Eastern minorities, Dr. Hanoosh has a strong understanding of human rights in the Middle East North African (MENA) region.

10.

In her personal capacity on her personal time, on June 2, 2025, Dr. Hanoosh attended a Beaverton School District Board meeting to support a Beaverton School District Board member Dr. Tammy Carpenter, who had been the subject of a targeted campaign of harassment for speaking out against the genocide of Palestinian people in Gaza (a third-party investigation determined the charges against Dr. Carpenter were unfounded). During the school board meeting, a faction of pro-Israeli demonstrators shouted "Hamas! Hamas!," among other things,

PAGE 3 – COMPLAINT

ALBIES & STARK
ATTORNEYS AT LAW
1500 SW FIRST AVE #1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

EXHIBIT 1
Page 3 of 28

at Dr. Carpenter and the people speaking at the board meeting in support of Palestinian human rights and against the ongoing genocide.

11.

After the school board meeting ended, people in attendance gathered near the parking lot outside the meeting. A group of men engaged in a heated discussion with Dr. Hanoosh. Without identifying herself by name or affiliation during the exchange, she asked them if they believed that Palestinian children had a right to live like other children. One of the men asked her, "What do you know about Hamas?" Dr. Hanoosh sarcastically responded, "I am Hamas, we are all Hamas (gesturing to the people around her), you are Hamas! (speaking to her interlocutor)."

12.

Sarcasm—a figure of speech in which words convey the opposite of their literal meaning, often to signal irony or irritation—was apparent, as evidenced by the interlocutor's equally sarcastic response, "You're Hamas? Great!" Unbeknownst to Dr. Hanoosh, this exchange was recorded without her consent and widely disseminated on social media with the allegation that she was expressing affiliation with and support for Hamas.

13.

At all relevant times, Dr. Hanoosh spoke as a private citizen in a one-on-one exchange, in an off-campus setting. Her statement was rhetorical and sarcastic in nature, not an expression of literal belief or affiliation.

14.

Dr. Hanoosh's rhetorical and sarcastic expression is fully protected under the First Amendment. Courts have long recognized that speech employing exaggeration, irony, or figurative language cannot reasonably be interpreted as a literal statement of fact. In context,

PAGE 4 – COMPLAINT

**ALBIES & STARK**
**ATTORNEYS AT LAW**
1500 SW FIRST AVE #1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

**EXHIBIT 1**
**Page 4 of 28**

her remark was an obvious instance of rhetorical hyperbole made in response to a provocative question.

15.

The instigator's question and the broader context of the interaction that lasted for a few minutes was edited down to a five-second clip of Dr. Hanoosh uttering sarcastically, "I am Hamas, we are all Hamas." This clip was widely disseminated through notable right-wing and pro-Israel provocateur social media accounts known for targeting speech critical of the Israeli state's war crimes and the Gaza genocide. For example, Canary Mission and StopAntisemitism.com are facing lawsuits in Oregon and elsewhere, including a class action lawsuit, for targeting and doxxing people who engage in such protected speech.

16.

These social media accounts were used to launch defamation and harassment campaigns against Dr. Hanoosh, including a pressure campaign to get her fired from PSU by sending hundreds of boilerplate emails to PSU administrators objecting to their perceived version of Dr. Hanoosh's political views (PSU claimed receiving over 1200 emails). All or a majority of the writers of these emails were not present at the event and presumably based their complaints on the edited clip that was stripped of context.

17.

At the time of this incident, in June 2025, Dr. Hanoosh had been on sabbatical leave since Spring 2024. She had not interacted with PSU students, faculty, or staff on campus for several months.

18.

On June 5, 2025, Dr. Hanoosh received an ominous and threatening email to her work email, also addressed to PSU administrators. Dr. Hanoosh responded to the PSU administrators only, imploring them to see how their Arab and Muslim faculty, staff, and students

PAGE 5 – COMPLAINT

**ALBIES & STARK**
**ATTORNEYS AT LAW**
1500 SW FIRST AVE #1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

**EXHIBIT 1**
**Page 5 of 28**

were often harassed and targeted with hateful and threatening speech. No one from PSU reached out to Dr. Hanoosh to inquire what she meant or to have her provide any context for this email, or to follow up on her reported concerns.

19.

Despite Dr. Hanoosh's long-standing employment and availability, Defendants made no effort to contact her prior to issuing public statements about her as described below.

20.

PSU's Equity & Compliance framework includes the requirement that investigations be prompt, thorough, and impartial. These principles prohibit PSU from making substantive judgments prior to fact-finding.

21.

Yet, on June 6, 2025, Defendant PSU President Ann Cudd issued a public statement, emailed to the entire PSU community and posted on PSU's website, entitled "Statement on Reprehensible Video" referring to the edited video of Dr. Hanoosh. Cudd's statement prejudged the allegations and reached a conclusion without prior investigation—indeed, without so far as even discussing the issue with Dr. Hanoosh. President Cudd declared Dr. Hanoosh's statements in the video to be "absolutely unacceptable" and associated them with "antisemitism," "terrorism," and "hate," while simultaneously announcing an investigation.

Specifically, President Cudd wrote:

Portland State University has been made aware of a short video circulating that includes a PSU professor speaking at an independent, non-university event off campus. The individual makes statements, "I am Hamas. We are all Hamas."

PSU stands unequivocally against antisemitism, terrorism, and hate of any kind, including the statements made in this video. Our university community has been working hard to create a welcoming and supportive environment for all, including our Jewish students, faculty and staff. The statements made in this video are absolutely unacceptable.

PAGE 6 – COMPLAINT

ALBIES & STARK
ATTORNEYS AT LAW
1500 SW FIRST AVE #1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

EXHIBIT 1
Page 6 of 28

PSU is conducting an investigation of this incident and the faculty member involved has been placed on administrative leave.

We have taken a number of steps this year to improve the safety of our campus and protect free speech. For example, we clarified and posted time, place, manner standards for free speech. PSU's Office of Equity & Compliance (OEC) staff conduct in-person and remote training on a regular basis related to bias response and reporting.

Additionally, we recognize that events like this one indicate the need for additional education, and this term we offered a free, one-credit class on antisemitism that was well received by the more than 100 students who are taking it. We intend to make this course available to more members of our community. We are committed to providing a campus environment free from hate.

22.

The statement conveyed that Dr. Hanoosh had engaged in antisemitic, pro-terrorist, and hateful conduct, thereby endorsing or aligning herself with extremist ideology.

23.

Defendant Ann Cudd's publicly condemnation of Dr. Hanoosh and use of terms like "antisemitism," "terrorism," and "hate,"—and all without even asking Dr. Hanoosh about it—was defamatory, untrue, and harmful.

24.

After President Cudd's statement, newspapers began reporting that Dr. Hanoosh was the person in the video, and that her colleagues at PSU helped identify her as an employee there. Dr. Hanoosh's work email was soon flooded with hate mail and threats, which PSU did not investigate or do anything else to address.

25.

Instead of supporting faculty in the face of a vicious, racist doxxing campaign, PSU amplified and legitimized the harm by restating the hateful, racist statements in public announcements and through retaliatory disciplinary actions.

PAGE 7 – COMPLAINT

**ALBIES & STARK**
ATTORNEYS AT LAW
1500 SW FIRST AVE #1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

**EXHIBIT 1**
**Page 7 of 28**

26.

Although the statement did not refer to Dr. Hanoosh by name, it disclosed sufficient information to make her readily identifiable, thereby undermining confidentiality protections typically afforded in such proceedings. The statement referred to Dr. Hanoosh as a PSU professor, quoted her statement, announced the initiation of an investigation and placement of Dr. Hanoosh on administrative leave, and referred readers to the viral doxxing video where Dr. Hanoosh is identified by name, affiliation, face, and voice.

27.

PSU policy requires that, prior to placing a faculty member on administrative leave during an investigation, PSU must notify Dr. Hanoosh's union, American Association of University Professors ("AAUP"), and engage in a good-faith discussion regarding the University's concerns and possible alternatives to administrative leave, sharing as much information as reasonably possible to permit a full and meaningful exchange. Upon information and belief, Defendants failed to comply with these obligations.

28.

On June 6, 2025, the same day President Cudd publicly denounced Dr. Hanoosh, PSU placed her on administrative leave pending investigation, stating that PSU had "received complaints alleging that [she] may have engaged in conduct that, if true, could be a violation of the University's Prohibited Discrimination and Harassment Policy. The complaints include allegations that [she] made statements in a public setting that have resulted in the complainants feeling fearful for their physical safety on campus based on their Jewish identity." And directly contrary to President Cudd's public statement, the notice went on to state that "the University does not make assumptions about whether alleged conduct occurred as reported."

///

PAGE 8 – COMPLAINT

ALBIES & STARK
ATTORNEYS AT LAW
1500 SW FIRST AVE #1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

EXHIBIT 1
Page 8 of 28

29.

The simultaneous issuance of a public condemnation and administrative leave created the appearance of discipline prior to adjudication. While administrative leave may be permissible as a neutral precaution, its pairing with public condemnation rendered it functionally punitive.

30.

The HR notice placing Dr. Hanoosh on administrative leave failed to include any timeline for the investigation or anticipated resolution. This omission left Plaintiff in a state of indefinite uncertainty regarding her employment status, professional responsibilities, communication with colleagues and students, and ability to return to campus.

31.

Defendants justified their actions in part on complaints alleging that Dr. Hanoosh's statements caused individuals to fear for their physical safety. However, Defendants did not conduct a safety assessment, did not consult campus security, and did not initiate any threat evaluation process.

32.

Instead, Defendants imposed severe restrictions on Dr. Hanoosh, including placing her on administrative leave, barring her from entering campus and communicating with any PSU personnel—measures typically reserved for substantiated or urgent threats. Despite repeated requests from Dr. Hanoosh for information regarding the nature of such complaints against her, Defendants did not produce documentation of any such complaints until January 16, 2026.

33.

PSU's administrative leave served functionally as a faculty suspension, which is a severe and stigmatizing action, second only to dismissal, because it signals a highly negative judgment about a professor's conduct.

PAGE 9 – COMPLAINT

ALBIES & STARK
ATTORNEYS AT LAW
1500 SW FIRST AVE #1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

EXHIBIT 1
Page 9 of 28

34.

Defendants did not seek Dr. Hanoosh's account of the incident until November 19, 2025—one hundred and sixty-seven days after putting her on administrative leave on June 6, 2025 and publicly condemning her alleged conduct as "antisemitism," "terrorism," and "hate."

35.

Throughout the unreasonably long investigation period from June 6, 2025 to March 16, 2026, PSU barred Dr. Hanoosh from communicating with all PSU faculty, staff, and students on campus and off campus, thus depriving her of the support of her colleagues and community during an intensely difficult and frightening period while she was subjected to harassment, hate, and threats. PSU also prohibited Dr. Hanoosh from entering campus, including disabling her card access to PSU buildings.

36.

While the investigation and punitive measures were "pending" for almost ten months, PSU cancelled Dr. Hanoosh's summer, fall, and winter term classes or found substitute instructors without allowing Dr. Hanoosh to coordinate with them, share the curriculum, or assess their preparedness for the emergency teaching assignment. These restrictions, imposed in conjunction with public condemnation, evidence that PSU had already found Dr. Hanoosh culpable, contrary to PSU's obligation to maintain neutrality during ongoing investigations.

37.

Upon information and belief, PSU has undertaken or is considering reductions in academic programming, including in areas affecting Dr. Hanoosh's department. As a result, she may be forced to seek employment at other institutions. Defendants' actions—particularly the public dissemination of statements associating Dr. Hanoosh with antisemitism, terrorism, and hate—have significantly damaged her professional reputation and impaired her ability to secure future academic employment and/or participate in scholarly collaborations. This reputational

PAGE 10 – COMPLAINT

**ALBIES & STARK**
**ATTORNEYS AT LAW**
1500 SW FIRST AVE #1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

**EXHIBIT 1**
**Page 10 of 28**

harm has directly and proximately diminished Plaintiff's future earning capacity and professional opportunities.

38.

Other PSU faculty members have engaged in public political speech on matters relating to Israel and Palestine, including speech expressing strong pro-Israel and anti-Palestinian views, without being subjected to comparable adverse action. For example, PSU faculty member Dr. Michael Weingrad has publicly and repeatedly expressed strong pro-Israel and pro-IDF views on social media and, upon information and belief, has made public statements about Plaintiff that are false and defamatory. Despite this conduct, upon information and belief, Defendants have not subjected Dr. Weingrad to public condemnation, administrative leave, or disciplinary measures.

39.

Upon information and belief, the complaints against Dr. Hanoosh alleging fear for the person's physical safety originated from some of Dr. Hanoosh's own colleagues, with whom she had worked professionally for fifteen years without any history of conduct suggesting a risk to physical safety. Moreover, Dr. Hanoosh had been on sabbatical leave the entire academic year 2024-2025 and had not interacted with these colleagues remotely or in person since May 2024. Despite this longstanding record of collegiality, and no evidence of any threatening or harmful behavior, these colleagues asserted they felt unsafe based on Dr. Hanoosh's alleged statements in the edited video, and without any objective evidence supporting such claims.

40.

At the time of the events described herein, Dr. Hanoosh's child was a minor. After Defendants' public dissemination of a false and inflammatory narrative about her, she experienced severe and ongoing distress regarding the safety of her child and had to make

PAGE 11 – COMPLAINT

ALBIES & STARK
ATTORNEYS AT LAW
1500 SW FIRST AVE #1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

EXHIBIT 1
Page 11 of 28

difficult decisions regarding her child's safety, which increased her fear, anxiety, and emotional distress.

41.

The investigative process further reflected and reinforced a hostile and one-sided departmental environment. PSU hired an investigator, Ryan Gibson, who issued a final report in which he credited and extensively documented the subjective perceptions and concerns of Dr. Hanoosh's colleagues, while failing to ask her any questions regarding her own experiences within the department, including interpersonal dynamics, prior conflicts, or potential bias. This asymmetrical treatment resulted in a report that amplified accusations against her while omitting exculpatory context and her own account of departmental interactions.

42.

Once in receipt of Gibson's investigatory report, Defendants do not appear to have challenged or found concern with the investigation's bias.

43.

From June 6, 2025 to March 6, 2026, Dr. Hanoosh's union AAUP repeatedly demanded that PSU take down President Cudd's statement condemning Dr. Hanoosh and requested information on why the investigation was taking so long. PSU did not substantively respond to either inquiry and refused to take down President Cudd's statement.

44.

On March 6, 2026, PSU informed Dr. Hanoosh that the investigation phase was nearing completion and finally met with Dr. Hanoosh on March 16, 2026.

45.

During this meeting, PSU set restrictive rules. They told Dr. Hanoosh that the confidential investigation report would be shared with her; that she had 20 minutes to read it

PAGE 12 – COMPLAINT

EXHIBIT 1
Page 12 of 28

before they told her what would happen next; that the investigation was privileged; and that she was not allowed to share it with anyone other than her union and legal counsel.

46.

The report exonerated Dr. Hanoosh of violating any PSU policies.

47.

Despite exonerating Dr. Hanoosh, the report itself was biased and one-sided. For example, it made several points that conflated hatred towards Jewish people based on ancestry, ethnicity, or race (antisemitism), with support for Palestinian human rights or opposition to the state of Israel's conduct, and falsely framed Dr. Hanoosh's political views against a genocide as antisemitic. Further, the narrative focused on the few PSU voices in opposition to Dr. Hanoosh, while omitting mention of the large number of letters from her supporters shared with the investigator, including letters from prominent Jewish colleagues, and a statement of community solidarity and support sent to President Cudd signed by over 500 local and national students, faculty, and community members.

48.

Despite finding no policy violations, the report faulted Dr. Hanoosh for failing to anticipate that she would be filmed, and that her comments would be taken out of context and weaponized against her. Notably, the report failed to mention that Dr. Hanoosh was the victim of numerous threats as described above.

49.

At the conclusion of the investigatory meeting, PSU admonished Dr. Hanoosh that she could not retaliate against anyone who made a complaint against her, including naming the people who had made unfounded complaints against her.

///

PAGE 13 – COMPLAINT

ALBIES & STARK
ATTORNEYS AT LAW
1500 SW FIRST AVE #1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

EXHIBIT 1
Page 13 of 28

50.

Not wanting to risk violating PSU policy, Dr. Hanoosh asked PSU to specify what type of conduct it believed could constitute retaliation. PSU did not respond specifically to her question.

51.

After she returned to work in April 2026, Dr. Hanoosh began teaching a class on Islamophobia and anti-Arab racism. PSU Dean David Bowman initiated a meeting with her before the class to express his concerns, including that the topic of the course is "deeply polarizing," that the content may be viewed as a form of "indoctrination," that Dr. Hanoosh is "a controversial figure," and that she was "walking into a minefield" by offering the class. However, the topics covered by Dr. Hanoosh in this class are similar to what she has taught and researched throughout her more than fifteen years at PSU, she has never had a single complaint from a student about the course content or how they felt in her classes, and the only reason she could now be viewed as a "controversial figure" is entirely due to PSU's actions. Dean Bowman also expressed his concern that the course had not gone through "a proper vetting process," despite the fact that PSU has no course vetting process. He also advised her to exclude certain topics, a direct violation of Dr. Hanoosh's right to academic freedom inside the classroom.

52.

In years prior, The Summer Scholars Program at PSU solicited Dr. Hanoosh to teach summer courses based on her seniority and pedagogical contributions. While Dr. Hanoosh was on administrative leave and not receiving PSU communication, PSU offered previous instructors the opportunity to teach 2026 summer classes. Because she was excluded from these communications, PSU filled these roles with other instructors. Dr. Hanoosh therefore lost out on the opportunity to teach a summer course she had.

PAGE 14 – COMPLAINT

ALBIES & STARK
ATTORNEYS AT LAW
1500 SW FIRST AVE #1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

EXHIBIT 1
Page 14 of 28

53.

In addition, while on administrative leave, Dr. Hanoosh was unable to fully participate in administrative activities related to the Arabic program, including participation in departmental discussions of the Plan for Institutional Vitality and Organizational Transformation (PIVOT), the process by which PSU claims to evaluate academic programs and university programs for financial stability.

54.

While on administrative leave, Dr. Hanoosh repeatedly opposed PSU's treatment of her, including complaints of being left out of departmental processes and practices that may impact her employment, and advocated for transparency in how it was treating her. Dr. Hanoosh also repeatedly advocated for an end to PSU's punitive measures against her.

55.

On May 14, 2026, PSU gave notice to Dr. Hanoosh that it had selected her position for elimination, effective June of 2027. In so doing, PSU deviated from its standard practice for selecting positions for layoff. For example, the dean represented that there were not concerns about the language minor degrees (Arabic among them), and the PIVOT review only involved evaluations of the majors. Yet PSU's layoff letter to Dr. Hanoosh specified consideration of the Arabic minor in the elimination of her position.

56.

As a result of Defendants' conduct, Dr. Hanoosh has suffered and continues to suffer emotional distress, including fear, anxiety, humiliation, and distress for her personal and family safety; economic damages; loss of professional opportunities; hostile work environment; and ongoing reputational harm.

///

PAGE 15 – COMPLAINT

ALBIES & STARK
ATTORNEYS AT LAW
1500 SW FIRST AVE #1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

EXHIBIT 1
Page 15 of 28

57.

As a direct and proximate result of Defendants' conduct, Dr. Hanoosh has suffered and will continue to suffer substantial economic harm, including loss of professional opportunities, diminished earning capacity and career advancement, and impairment of her ability to secure future academic employment. Dr. Hanoosh is a tenured full professor with a specialized scholarly profile, and comparable academic positions nationally are limited in number and highly competitive. Positions for senior scholars in Arabic and Middle Eastern studies typically involve multi-year hiring cycles and require rigorous vetting of a candidate's professional reputation. The defamatory and stigmatizing statements published by Defendants—associating Plaintiff with antisemitism, terrorism, and hate—have foreseeably disqualified her from consideration for such positions, as well as from visiting appointments, fellowships, editorial roles, and grant-funded opportunities.

58.

In academic hiring and advancement, reputation is a central factor. Universities routinely conduct extensive background reviews, including online searches, media review, and consultation with professional networks, before extending offers or invitations. Allegations of association or support of terrorism, antisemitism, or hate can be disqualifying regardless of accuracy, due to concerns about institutional risk, donor relations, and campus climate.

59.

These losses are reasonably expected to result in hundreds of thousands to millions of dollars in lost compensation, research funding, and career advancement over the course of Dr. Hanoosh's professional life.

///

///

PAGE 16 – COMPLAINT

ALBIES & STARK
ATTORNEYS AT LAW
1500 SW FIRST AVE #1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

EXHIBIT 1
Page 16 of 28

60.

After being exonerated of the allegations, Dr. Hanoosh directly and through AAUP again requested President Cudd's statement be taken off the PSU website. As of the time of this filing, it remains posted and accessible to the public.

61.

Dr. Hanoosh filed a timely tort claim notice on December 3, 2025.

**FIRST CLAIM FOR RELIEF**
**(National Origin Discrimination – ORS § 659A.030(1)(a))**
**(Against Defendant PSU)**

62.

Plaintiff incorporates the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

63.

Plaintiff is an Arab-American woman of Iraqi Christian descent, placing her within multiple protected classes under federal and Oregon law, including national origin. Defendant's actions—including public condemnation, an extended and biased investigation, and selective dissemination of information—targeted Plaintiff because of her national origin. Its conduct exploited stereotypes associating Arab individuals with terrorism, entirely ignored Plaintiff's perspective, and amplified false narratives, creating a hostile environment and causing severe reputational and professional harm. By acting against Plaintiff on account of her protected status, Defendant engaged in unlawful discrimination in violation of ORS § 659A.030(1)(a).

64.

Defendant PSU discriminated against Plaintiff in the terms and conditions of her employment based on her national origin, in violation of ORS § 659A.030(1)(a). Plaintiff was subjected to adverse actions—including public condemnation, failure to protect her from threats

PAGE 17 – COMPLAINT

**ALBIES & STARK**
**ATTORNEYS AT LAW**
1500 SW FIRST AVE #1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

**EXHIBIT 1**
**Page 17 of 28**

and doxxing, administrative leave, exclusion from campus, communication restrictions, and a protracted investigation—under circumstances giving rise to an inference of discrimination.

65.

PSU's stated justification for its conduct—that Plaintiff's alleged statements created safety concerns—was pretextual. No meaningful threat assessment was conducted, campus safety personnel were not consulted, and no objective evaluation of risk was undertaken.

Further, similarly situated non-Arab faculty who engaged in comparable or more inflammatory public speech were not disciplined, including those who made false or defamatory statements about Plaintiff. Combined with reliance on stereotypes associating Arab individuals with terrorism, these disparities evidence discriminatory intent.

66.

Defendant PSU's violations of ORS 659A.030(1)(a) directly and proximately caused Plaintiff economic damages in the form of lost professional opportunities and diminished future earning capacity, and emotional distress, including anxiety, fear for personal and family safety, humiliation, and lasting reputational damage in an amount to be determined by the jury, up to $7,000,000.

67.

Pursuant to ORS § 20.107 and ORS § 659A.885, Plaintiff is entitled to economic damages including lost professional opportunities, diminished earning capacity, and future lost wages and professional opportunities, reasonable attorney fees, and costs.

**SECOND CLAIM FOR RELIEF**
**(Hostile Work Environment – National Origin Discrimination – ORS § 659A.030(1)(a))**
**(Against Defendant PSU)**

68.

Plaintiff incorporates the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

PAGE 18 – COMPLAINT

**ALBIES & STARK**
ATTORNEYS AT LAW
1500 SW FIRST AVE #1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

**EXHIBIT 1**
**Page 18 of 28**

69.

Defendant PSU subjected Plaintiff to a hostile work environment based on her national origin.

70.

As described above, Plaintiff was subjected to unfounded accusations by colleagues, differential treatment, and an extended and one-sided investigatory process that credited complaints rooted in stereotyping while disregarding her perspective.

71.

The conduct of Defendant PSU, including Plaintiff's colleagues and supervisors, in its repeated amplification of unsubstantiated safety concerns and failure to fairly represent Plaintiff's account, created an environment that was and continues to be intimidating, hostile, and offensive.

72.

This environment was further exacerbated by Defendants' public statements associating Plaintiff with terrorism, antisemitism, and hate, reinforcing stigmatization within her workplace.

73.

The hostile environment was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment. Defendant credited and amplified complaints grounded in stereotypes associating Arab individuals with terrorism, while disregarding Plaintiff's perspective, thereby creating an environment that was intimidating, stigmatizing, and professionally damaging.

74.

As a result, Plaintiff suffered damages as previously described.

///

PAGE 19 – COMPLAINT

ALBIES & STARK
ATTORNEYS AT LAW
1500 SW FIRST AVE #1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

EXHIBIT 1
Page 19 of 28

75.

Pursuant to ORS § 20.107 and ORS § 659A.885, Plaintiff is entitled to compensatory damages, including non-economic damages, economic damages including lost professional opportunities, diminished earning capacity, and future lost wages and professional opportunities, reasonable attorney fees, and costs

**THIRD CLAIM FOR RELIEF**
**(Retaliation – ORS § 659A.030(1)(f))**
**(Against Defendant PSU)**

76.

Plaintiff incorporates the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

77.

Defendant PSU subjected Plaintiff to adverse actions, including but not limited to termination, based on her opposition to Defendant's discriminatory conduct.

78.

As a result, Plaintiff suffered damages as previously described.

79.

Pursuant to ORS § 20.107 and ORS § 659A.885, Plaintiff is entitled to compensatory damages, including non-economic damages, economic damages including lost professional opportunities, diminished earning capacity, and future lost wages and professional opportunities, reasonable attorney fees, and costs.

**FOURTH CLAIM FOR RELIEF**
**(Whistleblowing Discrimination – ORS § 659A.199 and ORS § 659A.203)**
**(Against Defendant PSU)**

80.

Plaintiff incorporates the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

PAGE 20 – COMPLAINT

**ALBIES & STARK**
**ATTORNEYS AT LAW**
1500 SW FIRST AVE #1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

**EXHIBIT 1**
**Page 20 of 28**

81.

Defendant's behavior as alleged above violated ORS 659A.199 and OR 659A.203. Defendant retaliated against Plaintiff in the terms and conditions of her employment, including but not limited to terminating her employment because she opposed and reported in good faith information she believed to be illegal behavior.

82.

As a result, Plaintiff suffered damages as previously described.

83.

Pursuant to ORS § 20.107 and ORS § 659A.885, Plaintiff is entitled to compensatory damages, including non-economic damages, economic damages including lost professional opportunities, diminished earning capacity, and future lost wages and professional opportunities, reasonable attorney fees, and costs.

**FIFTH CLAIM FOR RELIEF**
**(First Amendment – 42 USC § 1983 (applied to the States by the Fourteenth Amendment))**
**(Against Defendant Ann Cudd, in her Individual Capacity for Damages, in her Official Capacity for Prospective Injunctive Relief, and against Defendant PSU for Prospective Injunctive Relief)**

84.

Plaintiff incorporates the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

85.

Plaintiff engaged in protected First Amendment activity while acting as a private citizen in an off-campus setting.

86.

At all relevant times, Defendant Ann Cudd was acting under color of state law in her capacity as President of Portland State University.

///

PAGE 21 – COMPLAINT

**ALBIES & STARK**
**ATTORNEYS AT LAW**
1500 SW FIRST AVE #1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

**EXHIBIT 1**
**Page 21 of 28**

87.

Plaintiff spoke as a private citizen on a matter of public concern during an off-campus interaction unrelated to her official duties.

88.

Plaintiff's speech did not disrupt university operations, interfere with her job performance, or impair institutional functioning.

89.

Defendant Cudd, acting under color of state law, violated Plaintiff's rights under the First Amendment to the United States Constitution by taking adverse action against Plaintiff because of her protected speech.

90.

Defendant Cudd took adverse actions against Plaintiff, including publicly condemning her in an official statement, placing her on administrative leave, and imposing significant professional and physical restrictions, and selecting her position for elimination were because of the content and viewpoint of Plaintiff's speech. These actions would chill a person of ordinary firmness from engaging in protected expression.

91.

As a direct and proximate result of Defendant Cudd's actions in her individual capacity, Plaintiff suffered damages including emotional distress, health problems, lasting reputational harm, economic loss, and diminished career and economic opportunities.

92.

Defendant PSU subjected Plaintiff to adverse actions, including public condemnation, administrative leave, exclusion from campus, communication restrictions, isolation, and a prolonged investigation.

PAGE 22 – COMPLAINT

**ALBIES & STARK**
ATTORNEYS AT LAW
1500 SW FIRST AVE #1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

EXHIBIT 1
Page 22 of 28

93.

Defendant Cudd is liable in her individual capacity for damages pursuant to 42 USC § 1983 and 42 USC § 1988.

94.

In addition, Defendant Cudd, in her official capacity, and Defendant PSU continues to maintain and enforce the effects of the unconstitutional conduct, including the continued publication of the defamatory and retaliatory statement on PSU's official website.

95.

Accordingly, Plaintiff seeks prospective injunctive relief against Defendant Cudd in her official capacity and Defendant PSU, including removal or correction of the statement and other relief necessary to prevent ongoing violations of Plaintiff's constitutional rights.

**SIXTH CLAIM FOR RELIEF**
**(Fourteenth Amendment – Equal Protection & Liberty Interest – 42 USC § 1983)**
**(Against Defendant Ann Cudd, in her Individual Capacity for Damages, and in her Official Capacity and Against Defendant PSU for Prospective Injunctive Relief)**

96.

Plaintiff incorporates the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

97.

Defendant Ann Cudd, acting under color of state law, violated Plaintiff's rights under the Fourteenth Amendment to the United States Constitution.

98.

**Equal Protection**

Defendant Cudd intentionally treated Plaintiff differently from similarly situated individuals based on her national origin. As alleged above, non-Arab faculty members engaging in comparable public political speech were not subjected to public condemnation.

PAGE 23 – COMPLAINT

**ALBIES & STARK**
**ATTORNEYS AT LAW**
1500 SW FIRST AVE #1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

**EXHIBIT 1**
**Page 23 of 28**

99.

This differential treatment was motivated, at least in part, by discriminatory intent, including reliance on stereotypes associating Arab individuals with terrorism, and was not justified by any legitimate governmental interest.

100.

**Liberty Interest**

Defendant Cudd also deprived Plaintiff of a protected liberty interest without due process of law. Specifically, Defendant Cudd publicly stigmatized Plaintiff by associating her with terrorism, antisemitism, and hate in an official university statement, while simultaneously altering her legal status and conditions of employment by placing her on administrative leave, restricting her access to campus, and limiting her professional and personal activities.

101.

This combination of reputational harm and tangible alteration of Plaintiff's employment and social status constitutes a deprivation of liberty without due process.

102.

As a direct and proximate result of Defendant Cudd's actions in her individual capacity, Plaintiff suffered damages including emotional distress, lasting reputational injury, and future economic and career harm.

103.

Defendant Cudd is liable in her individual capacity for damages pursuant to 42 USC § 1983.

104.

In addition, Defendant Cudd, in her official capacity, and Defendant PSU continue to enforce and maintain the effects of the unconstitutional conduct after Dr. Hanoosh's reinstatement.

PAGE 24 – COMPLAINT

**ALBIES & STARK**
**ATTORNEYS AT LAW**
1500 SW FIRST AVE #1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

**EXHIBIT 1**
**Page 24 of 28**

105.

Plaintiff therefore seeks prospective injunctive relief against Defendant Cudd in her official capacity and Defendant PSU to remedy ongoing constitutional violations, including removal or correction of the stigmatizing publication.

**SEVENTH CLAIM FOR RELIEF**
**(Defamation)**
**(Against Defendants)**

106.

Plaintiff incorporates the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

107.

Defendants published false and defamatory statements about Plaintiff on their website through an official university communication. Prior to publication, President Cudd announced these statements during a PSU Faculty Senate meeting, further amplifying the allegations. These actions damaged Plaintiff's reputation, subjected her to extensive threats, doxxing, harassment, and hostility from colleagues, and increased the risk to her personal safety—all foreseeable consequences of Defendants' statements.

108.

Under Oregon law, defamation includes not only false statements of fact but also statements that, although literally true, convey a false and defamatory implication when presented without necessary context. Defendants' statement went beyond expressing a generalized moral stance and instead conveyed a specific factual implication about Plaintiff— namely, that she endorsed or aligned herself with Hamas, terrorism, and/or antisemitic ideology. This implication is false. Plaintiff's statement, as captured in the widely circulated clip, was a sarcastic response in a personal exchange, not a literal expression of affiliation or support.

PAGE 25 – COMPLAINT

**ALBIES & STARK**
**ATTORNEYS AT LAW**
1500 SW FIRST AVE #1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

**EXHIBIT 1**
**Page 25 of 28**

109.

By omitting this critical context and characterizing the statements as "antisemitism," "terrorism," and "hate," Defendants created a materially false impression about Plaintiff's beliefs and conduct. A reasonable reader could understand the statement as asserting that Plaintiff supports or promotes terrorist ideology, which is a provably false factual implication and not merely protected opinion.

110.

Defendants acted at least negligently in broadcasting and publishing these statements without undertaking reasonable steps to verify the context of the video, despite Plaintiff's availability and the ease with which such verification could have been obtained. In addition, or in the alternative, Defendants acted with actual malice by publishing statements with knowledge of their misleading nature or with reckless disregard for the truth.

111.

Defendants' additional mischaracterizations in communications—including false descriptions of the setting and nature of Plaintiff's speech—further demonstrate a pattern of publishing misleading factual assertions without reasonable investigation. These statements reinforced the false implication that Plaintiff knowingly and publicly endorsed extremist ideology, when in fact her remarks occurred in an informal one-on-one exchange taken out of context.

112.

Defendants' failure to seek readily available context, combined with their use of definitive and condemnatory language in an official institutional statement, supports a plausible inference of reckless disregard for the truth. The resulting publication exposed Plaintiff to foreseeable reputational harm, harassment, and threats to her and her family's safety.

/ / /

PAGE 26 – COMPLAINT

ALBIES & STARK
ATTORNEYS AT LAW
1500 SW FIRST AVE #1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

EXHIBIT 1
Page 26 of 28

113.

Pursuant to ORS § 20.107, Plaintiff is entitled to damages, reasonable attorney fees, and costs.

**PRAYER**

WHEREFORE, Plaintiff prays for judgment from Defendants as follows:

(a)     For a permanent injunction requiring Defendants to remove the statement about Plaintiff from PSU's website and to offer retraction and declaratory relief to Plaintiff in an official university communication sufficient to fully annul the false statements of the original defamatory announcement;

(b)     Economic damages, including long-term and potentially permanent impairment of Plaintiff's academic career, such as loss of future employment opportunities, professional advancement, and participation in the scholarly community.

(c)     Damages for severe emotional distress, reputational harm, and threats to Plaintiff's safety;

(d)     Punitive damages;

(e)     Reasonable attorney fees and costs in an amount to be decided by the Court after trial;

(f)     Pre- and post-judgment interest in accordance with law; and

/ / /

/ / /

/ / /

PAGE 27 – COMPLAINT

**ALBIES & STARK**
**ATTORNEYS AT LAW**
1500 SW FIRST AVE #1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

**EXHIBIT 1**
**Page 27 of 28**

(g)     Any other equitable relief this Court may determine to be fair and just, in an amount to be determined at trial.

DATED this 20th day of May 2026

ALBIES & STARK

_s/ J. Ashlee Albies_
J. Ashlee Albies, OSB No. 051846
Ashlee@albiesstark.com
Maya Rinta, OSB No. 195058
Maya@albiesstark.com

ELEMENTAL LAW

_s/ Monica Goracke_
Monica Goracke, OSB No. 060650
monica@elemental.law

*Attorneys for Plaintiff Yasmeen Hanoosh*

PAGE 28 – COMPLAINT

**ALBIES & STARK**
**ATTORNEYS AT LAW**
1500 SW FIRST AVE #1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

**EXHIBIT 1**
**Page 28 of 28**

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| YASMEEN HANOOSH,<br><br>          Plaintiff,<br>vs.<br><br>PORTLAND STATE UNIVERSITY, a university, and ANN CUDD, an individual.<br><br>          Defendants. | CASE NO.:  26CV25476<br><br>**SUMMONS** |

TO:    **ANN CUDD**, through and via her attorney, Misha Isaak, Stoel Rives LLP, 760 SW Ninth Ave., Suite 3000, Portland, OR 97205, misha.isaak@stoel.com.

       You are hereby required to appear and defend the complaint filed against you in the above-entitled action within thirty (30) days from the date of service of this summons on you.  If you fail to appear and defend, the plaintiff will apply to the court for the relief demanded in the complaint.

**NOTICE TO DEFENDANT:
READ THESE PAPERS CAREFULLY!**

       You must "appear" in this case or the other side will win automatically. To "appear" you must file with the court a legal document called a "motion" or "answer." The "motion" or "answer" must be given to the court clerk or administrator within thirty (30) days along with the required filing fee. It must be in proper form and have proof of service on the plaintiff's attorney or, if the plaintiff does not have an attorney, proof of service on the plaintiff.

       If you have questions, you should see an attorney immediately. If you need help in finding an attorney, you may contact the Oregon State Bar's Lawyer Referral Service online at http://www.oregonstatebar.org or by calling (503) 684-3763 (in the Portland

ALBIES & STARK LLC

By _____
   J. Ashlee Albies, OSB No. 051846
   ashlee@albiesstark.com
   Whitney Stark, OSB No. 090350
   Whitney@albiesstark.com
   Maya Rinta, OSB No. 195058
   maya@albiesstark.com
   1 SW Columbia St., Ste. 1850
   Portland, OR  97204
   Telephone: (503) 308-4770
   Facsimile: (503) 427-9292

   Attorneys for Plaintiff

PAGE - 1        SUMMONS

**EXHIBIT 2**
**Page 1 of 6**

metropolitan area) or toll-free elsewhere in Oregon at (800) 452-7636.

TO THE OFFICER OR OTHER PERSON SERVING THIS SUMMONS:  You are hereby directed to serve a true copy of this summons, together with a true copy of the complaint mentioned therein, upon the individual or other legal entity to whom or which this summons is directed, and to make your proof of service on a separate document which you shall attach hereto.

_____
J. Ashlee Albies, OSB No. 051846

PAGE - 2        SUMMONS

**ALBIES & STARK**
**ATTORNEYS AT LAW**
1500 SW FIRST AVE., SUITE 1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

**EXHIBIT 2**
**Page 2 of 6**

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

YASMEEN HANOOSH,

         Plaintiff,

vs.

PORTLAND STATE UNIVERSITY, a university, and ANN CUDD, an individual.

         Defendants.

CASE NO.: 26CV25476

**SUMMONS**

TO:    **PORTLAND STATE UNIVERSITY**, through and via its attorney, Misha Isaak, Stoel Rives LLP, 760 SW Ninth Ave., Suite 3000, Portland, OR 97205, misha.isaak@stoel.com.

    You are hereby required to appear and defend the complaint filed against you in the above-entitled action within thirty (30) days from the date of service of this summons on you. If you fail to appear and defend, the plaintiff will apply to the court for the relief demanded in the complaint.

**NOTICE TO DEFENDANT:
READ THESE PAPERS CAREFULLY!**

    You must "appear" in this case or the other side will win automatically. To "appear" you must file with the court a legal document called a "motion" or "answer." The "motion" or "answer" must be given to the court clerk or administrator within thirty (30) days along with the required filing fee. It must be in proper form and have proof of service on the plaintiff's attorney or, if the plaintiff does not have an attorney, proof of service on the plaintiff.

    If you have questions, you should see an attorney immediately. If you need help in finding an attorney, you may contact the Oregon State Bar's Lawyer Referral Service online at http://www.oregonstatebar.org or by

ALBIES & STARK LLC

By_____
    J. Ashlee Albies, OSB No. 051846
    ashlee@albiesstark.com
    Whitney Stark, OSB No. 090350
    Whitney@albiesstark.com
    Maya Rinta, OSB No. 195058
    maya@albiesstark.com
    1 SW Columbia St., Ste. 1850
    Portland, OR 97204
    Telephone: (503) 308-4770
    Facsimile: (503) 427-9292

    Attorneys for Plaintiff

PAGE - 1        SUMMONS

**EXHIBIT 2**
**Page 3 of 6**

calling (503) 684-3763 (in the Portland metropolitan area) or toll-free elsewhere in Oregon at (800) 452-7636.

TO THE OFFICER OR OTHER PERSON SERVING THIS SUMMONS:  You are hereby directed to serve a true copy of this summons, together with a true copy of the complaint mentioned therein, upon the individual or other legal entity to whom or which this summons is directed, and to make your proof of service on a separate document which you shall attach hereto.

_____
J. Ashlee Albies, OSB No. 051846

PAGE - 2        SUMMONS

**ALBIES & STARK**
**ATTORNEYS AT LAW**
1500 SW FIRST AVE., SUITE 1000, PORTLAND, OR 97201
TEL 503.308.4770 | FAX 503.427.9292

**EXHIBIT 2**
**Page 4 of 6**

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| YASMEEN HANOOSH,<br><br>　　　　　Plaintiff,<br>vs.<br><br>PORTLAND STATE UNIVERSITY, a university,<br>and ANN CUDD, an individual.<br><br>　　　　　Defendants. | CASE NO.: 26CV25476<br><br>**ACCEPTANCE OF SERVICE** |

I, Misha Isaak, attorney for Ann Cudd, hereby accept service of the Summons and

Complaint (the "Pleadings") on behalf of Defendant as if the Pleadings had been served on

defendant in accordance with ORCP 7.


　5/29/2026

Date

Misha Isaak
Stoel Rives LLP
misha.isaak@stoel.com


Submitted on _____ by:


s/_____
J. Ashlee Albies, OSB No. 051846
ashlee@albiesstark.com

*Of Attorneys for Plaintiff*


PAGE - 1　　ACCEPTANCE OF SERVICE

**EXHIBIT 2**
**Page 5 of 6**

IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

YASMEEN HANOOSH,

          Plaintiff,

vs.

PORTLAND STATE UNIVERSITY, a university,
and ANN CUDD, an individual.

          Defendants.

CASE NO.:  26CV25476

**ACCEPTANCE OF SERVICE**

I, Misha Isaak, attorney for Portland State University, hereby accept service of the Summons and Complaint (the "Pleadings") on behalf of Defendant as if the Pleadings had been served on defendant in accordance with ORCP 7.

5/29/2026

Date

Misha Isaak
Stoel Rives LLP
misha.isaak@stoel.com

Submitted on _____ by:

s/_____
J. Ashlee Albies, OSB No. 051846
ashlee@albiesstark.com

*Of Attorneys for Plaintiff*

PAGE - 1    ACCEPTANCE OF SERVICE

**EXHIBIT 2**
**Page 6 of 6**

Case 3:26-cv-01280-AR    Document 2-1    Filed 06/24/26    Page 35 of 35

Skip to Main Content Logout My Account Search Menu Search Civil, Family, Probate and Tax Court Case Records Refine Search  Back

Location : All Locations   Images Help

# REGISTER OF ACTIONS
## CASE NO. 26CV25476

| Yasmeen Hanoosh vs Portland State University, Ann Cudd | §<br>§<br>§<br>§<br>§ | Case Type:<br>Date Filed:<br>Location: | **Tort - General**<br>**05/20/2026**<br>**Multnomah** |
|---|---|---|---|

---
### PARTY INFORMATION
---

| | | Attorneys |
|---|---|---|
| **Defendant** | **Cudd, Ann** | |
| **Defendant** | **Portland State University** | |
| **Plaintiff** | **Hanoosh, Yasmeen** | **J Ashlee Albies**<br>*Retained*<br>503 308-4770(W)<br><br>Maya Rinta<br>*Retained*<br>503 308-4778(W)<br><br>MONICA A GORACKE<br>*Retained*<br>971 339-0189(W) |

---
### EVENTS & ORDERS OF THE COURT
---

**OTHER EVENTS AND HEARINGS**

| 05/20/2026 | **Complaint** |
|---|---|
| | *National Origin Discrimination; Not Subject to Mandatory Arbitration* |
| | Created: 05/21/2026 8:04 AM |
| 05/20/2026 | **Service** |

| | Portland State University | Served | 05/29/2026 |
|---|---|---|---|
| | | Returned | 05/29/2026 |
| | Cudd, Ann | Served | 05/29/2026 |
| | | Returned | 05/29/2026 |

Created: 05/21/2026 8:04 AM

| 05/29/2026 | **Summons** |
|---|---|
| | Created: 06/03/2026 11:33 AM |
| 05/29/2026 | **Proof - Service** |
| | Created: 06/03/2026 11:33 AM |
| 05/29/2026 | **Summons** |
| | Created: 06/03/2026 11:33 AM |
| 05/29/2026 | **Proof - Service** |
| | Created: 06/03/2026 11:33 AM |

---
### FINANCIAL INFORMATION
---

| **Plaintiff** Hanoosh, Yasmeen | |
|---|---|
| Total Financial Assessment | 884.00 |
| Total Payments and Credits | 884.00 |
| **Balance Due as of 06/24/2026** | **0.00** |

| 05/21/2026 | Transaction Assessment | | | 884.00 |
|---|---|---|---|---|
| 05/21/2026 | xWeb Accessed eFile | Receipt # 2026-378268 | Hanoosh, Yasmeen | (884.00) |

**EXHIBIT 3**
**Page 1 of 1**    1/1